UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHN A. DARBONNE                                     CIVIL ACTION

VERSUS

NO. 17-371-SDD-RLB

NANCY A. BERRYHILL,
ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 31, 2018.

　　　　　　　　　　　　　　　　　　　／s／ Richard L. Bourgeois, Jr.
　　　　　　　　　　　　　　　　　　　RICHARD L. BOURGEOIS, JR.
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHN A. DARBONNE					CIVIL ACTION

VERSUS

						NO. 17-371-SDD-RLB

NANCY A. BERRYHILL,
ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

John A. Darbonne (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further proceedings consistent with this Ruling.

## I.    PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits (Tr. 128-29) on October 10, 2014, alleging that he became disabled on October 20, 2009[1] because of a disabling condition,

---

[1] At the administrative hearing, Plaintiff amended his disability onset date to January 24, 2013 as a result of a prior decision dated January 23, 2013. (Tr. 26-27).

namely Post-Traumatic Stress Disorder ("PTSD") and clinical depression. (Tr. 172). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 24-46) before issuing an unfavorable decision on March 17, 2016. (Tr. 9-23). Plaintiff's request for review of the ALJ's decision (Tr. 8) was denied by the Appeals Council on December 8, 2016. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even

if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are

medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had met the insured status requirements of the Social Security Act on December 31, 2014.

2. Plaintiff did not engage in substantial gainful activity during the period from his amended alleged onset date of January 24, 2013 through his date last insured of December 31, 2014.

3. Plaintiff had the following severe impairments: degenerative disc disease and obesity.

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.

5. Plaintiff had the residual functional capacity to perform the full range of light work.

6. Plaintiff was capable of performing past relevant work as a security supervisor.

7. Plaintiff was not under a disability from January 24, 2013 through December 31, 2014.

4

## IV.   DISCUSSION

Plaintiff advances two arguments in support of his request to reverse the ALJ's decision. First, Plaintiff argues that the ALJ failed to account for substantial evidence of mental limitations in his RFC analysis. (R. Doc. 10 at 6-10). Second, Plaintiff argues that the ALJ failed to question the VE regarding past relevant work and, therefore, erred at step four of the sequential evaluation process. (R. Doc. 10-11).

### A.   Plaintiff's RFC

"The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ considers all of a claimant's medically determinable impairments, including those that are not found to be severe, "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).

Plaintiff alleges that the ALJ erred when he failed to consider Plaintiff's mental limitations in determining his RFC. (R. Doc. 10 at 8). At step two, the ALJ found that Plaintiff's medically determinable mental impairments were non-severe. (Tr. 15). In his RFC assessment, the ALJ stated that "the claimant did not get mental health care until October 2014 and [the assessments of Andre Plauche and Christina Barrios] were completed less than one month later." (Tr. 18). The ALJ also gave little weight to those mental assessments on the grounds that "Ms. Plauche and Ms. Barrios are not medical doctors and are not acceptable medical sources." (Tr. 18).

The role of the court is not to re-weigh the evidence, but rather to determine whether substantial evidence supports the ALJ's findings. *Cox v. Berryhill*, 2018 WL 1532376, at *2

(N.D. Tex. Mar. 28, 2018) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Here, the question is whether substantial evidence in the record supports the ALJ's omission of any mental limitations in his RFC assessment of Plaintiff. Plaintiff argues that the ALJ failed to address a medical assessment done by Dr. Ron Taravella, and that, although Andrea Plauche and Christina Barrios are not acceptable medical sources, their records are still relevant evidence when assessing a claimant's RFC. (R. Doc. 10 at 9-11). The Commissioner responds that the ALJ properly weighed the records of Plauche and Barrios, and that "Plaintiff's argument … relies entirely on his own subjective statements and statements from medical practitioners that the ALJ properly assigned little weight." (R. Doc. 13 at 5).

To begin, Dr. Taravella's letter is dated September 29, 2011. (Tr. 429). The relevant period of consideration herein does not begin until January 24, 2013, based on the last decision from January 23, 2013. Accordingly, Plaintiff's argument that the ALJ should have considered Dr. Taravella's letter is without merit. "A claimant must establish disability on or before the date last insured in order to be entitled to a period of disability or disability insurance benefits." *Luckey v. Astrue*, 458 Fed. App'x 322, 323 n. 1 (5th Cir. 2011). Additionally, "[t]he Social Security Administration treats a subsequent disability application involving a non-adjudicated period as a separate determination requiring de novo review and an independent evaluation of the facts and the evidence." *Porter v. Colvin*, 2014 WL 1330279, at *4 (M.D. La. Mar. 31, 2014) (citing AR 00-1(4), 2000 WL 43774, at *3 (Jan. 12, 2000)).

Here, as noted by the Commissioner, the relevant period for Plaintiff's disability is January 24, 2013 through December 31, 2014, because Plaintiff's prior disability application was denied on January 23, 2013 and that decision is res judicata. *See Brown v. Apfel*, 192 F.3d 492, 495 (5th Cir. 1999). As that decision considered Plaintiff's mental impairments and mental

6

limitations (Tr. 50-61), evidence of same is not considered for purposes of the alleged period of disability herein. In other words, the only relevant evidence is from January 24, 2013 forward.

The only office visit records in the file that post-date the first disability decision are those of Dr. Burdine, Andrea Plauche, and Christina Barrios. Dr. Burdine is Plaintiff's pain management doctor, as was noted by Plaintiff at the administrative hearing. (Tr. 31, 35). Andrea Plauche is a nurse practitioner (Tr. 286) and Christina Barrios is a social worker (Tr. 289).

Dr. Burdine saw Plaintiff on July 23, 2013 for a routine scheduled visit and medication refill with a chief complaint of neck and low back pain. (Tr. 409). The records indicate that Plaintiff was "positive" for depression and suicide thoughts or attempts, but also notes that he was oriented to person, place, and time, his affect was appropriate and insight good, his judgement was appropriate, his remote and recent memory were intact and his mood was euthymic, or normal. (Tr. 411). The July 23, 2013 further indicates that he was referred to a psychologist, but also that his previous diagnosis of depression was improving. (Tr. 412). Dr. Burdine makes no mention of mental impairments in his typed summary of the visit. (Tr. 413). Dr. Burdine saw Plaintiff again in August of 2013 for a medication refill with a chief complaint of neck and low back pain. (Tr. 417). At that visit, Dr. Burdine recorded the same information with regard to depression and suicide thoughts or attempts, as well as his general mental status. (Tr. 418, 419). Dr. Burdine again noted that Plaintiff's depression was improving, while referring him to a psychologist. (Tr. 420). Despite noting improvement in his depression, and being a pain management doctor, Dr. Burdine recorded that "we're going to proceed with starting him on antidepressants," which suggests that he was taking no antidepressant medication up until August of 2013. (Tr. 421). The next record of Plaintiff seeing Dr. Burdine is in May of 2015. (Tr. 406). There, records note a medical history of anxiety or depression, but include no specific

7

information in the detailed descriptions, and note that his neuropsychiatric state was normal. (Tr. 406, 407). The exact same findings are recorded for a May 21, 2015 visit. (Tr. 405).

Even assuming a pain management doctor is an acceptable medical source for purposes of mental impairments or limitations,[2] Dr. Burdine's records do not support a finding of substantial evidence with regard to any mental limitations. He notes diagnoses of depression or anxiety, but no actual functional limitations as a result thereof. All of his neuropsychiatric findings are normal.

Plauche and Barrios, as the Commissioner points out, are not acceptable medical sources. Plauche is a nurse practitioner, which is not an acceptable medical source. 20 C.F.R. § 404.1502(a). Barrios, a licensed clinical social worker, is also not an acceptable medical source. 20 C.F.R. § 404.1502(a). Even were their opinions to be entitled to any more than the "little weight" afforded by the ALJ (Tr. 18), there is not substantial evidence supporting the inclusion of mental limitations in the RFC analysis. Although both Plauche and Barrios completed mental RFC assessments signed on December 5, 2014, after a month of treating Plaintiff, and those assessments contained the same mild, moderate, or market analyses, neither of their records are consistent with their findings with regard to Plaintiff's ability to work on a regular and sustained basis in light of mental impairments. (Tr. 313-316, 317-320).

Plaintiff's first visit with Plauche was October 29, 2014. (Tr. 300-304). She diagnosed him with depression, and recorded his reports of his history and symptoms, but notes that he appeared appropriate and adequately groomed, he was cooperative with good eye contact and normal psychomotor activity, normal speech, goal-directed, organized, logical, and linear

---

[2] *See, e.g.*, 20 C.F.R. § 404.1527 (c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a sources who is not a specialist.").

8

thought process, and intact insight or judgment, despite a sad/depressed mood and affect, and feeling of helplessness. (Tr. 301-302). Similar diagnoses without functional limitations are noted through Plauche's records. (Tr. 281-82, 274, 267, 263, 256). There are several notations of improvement, as well. (Tr. 280, 272, 255). Similarly, Plaintiff's first visit with Barrios was October 29, 2014. (Tr. 289-99). She also diagnosed him with depression, and recorded his reports of his history and symptoms (Tr. 289, 294). Barrios, like Plauche, also consistently found normal mental functioning despite the presence of mental impairments, including appropriate dress and adequate grooming, cooperative behavior, normal speech, goal-directed thought process, normal thought content, and intact insight or judgment. (Tr. 292, 287, 284, 260). In short, even were the records and opinions of Plauche and Barrios to have been afforded more weight, they do not support Plaintiff's argument that mental limitations should have been included in the ALJ's RFC assessment.

An RFC is not the assessment of the existence of an impairment, but rather the functional limitations attributable to existing impairments. The ALJ found that Plaintiff suffered from mental impairments that were not severe, but included no functional limitations as a result of those impairments, and substantial evidence in the record supports that finding, including the ALJ's consideration of the opinions and records of Dr. Burdine, Plauche, and Barrios. Accordingly, the Court is unable to conclude that the ALJ committed error when he did not include any mental limitations in his RFC assessment.

### B. ALJ's Step Four Determination

After finding the Plaintiff retained the RFC to perform the full range of light work, the ALJ concluded at step four that Plaintiff was capable of performing his past relevant work of security supervisor. (Tr. 18). In coming to that conclusion, the ALJ states that:

9

> The Administrative Law Judge called upon the vocational expert to assume an individual with the claimant's residual functional capacity and employment history. The Administrative Law Judge asked the vocational expert whether such an individual could perform any of the claimant's past relevant work. The vocational expert testified that given all of these factors, such an individual would be capable of performing the claimant's past relevant work as a security supervisor."

(Tr. 18).

A review of the transcript of the administrative hearing reveals, however, that no such exchange occurred. As it pertains to the Plaintiff's past relevant work as a security advisor, the ALJ and VE had the following conversation:

> ALJ:   Okay, great, I was a little confused there. All right. What can you tell me?
>
> ***
>
> A[VE]: Okay. As computer technician, the DOT number is 828.261-022, which is medium, skilled with an SVP of 7. Security supervisor –
>
> Q:   Wait, security what?
>
> A:    Supervisor.
>
> Q:   Supervisor, okay.
>
> A:   The DOT number is 372.167-014, which is light, skilled with an SVP of 6. At POS systems, the DOT –
>
> Q:   What was that?
>
> A:   That was computer technician.
>
> ***
>
> ALJ: All right. Mr. Laboth, any questions?
>
> ATTY: No questions, Your Honor.

(Tr. 43-45). Contrary to what the ALJ represented in his decision, the ALJ did not ask the VE whether a hypothetical individual with claimant's past relevant work and the RFC to perform the full range of light work could perform any of Plaintiff's past relevant work, nor did the VE

10

testify that such a hypothetical individual would be capable of performing Plaintiff's past relevant work as a security supervisor. In fact, the ALJ only asked the VE for the DOT classifications of Plaintiff's past relevant work. At no point did the VE ask whether a hypothetical individual with the Plaintiff's RFC would be able to perform Plaintiff's past relevant work, either as actually performed or as performed generally in the national economy.

Plaintiff argues that the ALJ's statement that he "relied upon the testimony of the VE" in conjunction with the ALJ's inaccurate representation regarding what that testimony was amounts to reversible error. (R. Doc. 10 at 11). The Commissioner responds that the ALJ's error was merely "typographical rather than substantive in nature," and that Plaintiff has not been prejudiced by the error. (R. Doc. 13 at 8-9).

The Court does not agree with the Commissioner that this is a typographical error. Rather, the ALJ's decision represents that substantive testimony, under oath, existed when it did not. From there, and viewing what remains of the ALJ's step four analysis when the error and its fruits are omitted from consideration, there is simply insufficient discussion and analysis in the ALJ's decision for the Court to review. The first paragraph of the ALJ's step four decision is wholly tainted by the VE testimonial error. The second and fourth paragraphs are conclusory, and void of any indication of the evidence relied upon and analyses employed. It is unclear whether the "vocational expert's testimony" suggested to be consistent with the information in the DOT in the third paragraph refers to the VE's testimony as actually occurred, or as fabricated in the first paragraph.

Though not controlling, the case of *Fitzgerald v. Astrue*, 2012 WL 6676446, at *19 (M.D. Tenn. Dec. 21, 2012, *report and recommendation adopted*, 2013 WL 265233 (M.D. Tenn. Jan. 22, 2013), is instructive, wherein the court stated the following:

> The Court is troubled, however, by the ALJ's conclusion that the plaintiff can return to his past relevant work given his RFC. This portion of the ALJ's decision relies exclusively on the VE's testimony—testimony which the ALJ misquotes in his decision. The ALJ's decision does not cite to any other support in the record for the conclusion that the plaintiff can return to his past relevant work. Nor does it contain any comparison of the physical and mental demands of his past work with his RFC. Nor does it contain any support for the ALJ's conclusion that the plaintiff is able to perform this work "as it is performed in the national economy." (Tr. 18.) . . . Given the lack of meaningful analysis in this portion of the ALJ's decision, and given the ALJ's mistaken reliance on the VE's testimony as the sole support for his determination, the Court must conclude that the ALJ's decision at step four is not supported by substantial evidence.

This Court has similar concerns. The only statement by the ALJ at step four that is not influenced by the error with regard to the VE's testimony, is where the ALJ states "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (Tr. 19). This statement lacks any supporting discussion as to how the ALJ reached this conclusion such that determining whether substantial evidence supports the ALJ's decision proves to be an insurmountable task.

Lastly, the ALJ suggests that, even if Plaintiff were ultimately found to be unable to perform his past relevant work, he would "still be found not disabled under direct application of the Medical-Vocational Guideline Rules." (Tr. 19). Neither party addresses this alternative passing conclusion. The ALJ's decision contains no application or analysis of the GRIDS in any manner.[3]

While the line of harmless error analysis can be difficult to draw, the Court's role is still to review the sufficiency of the ALJ's decision, not write it. Considering the clear error in

---

[3] The Court takes no position as to whether Plaintiff's severe impairment of obesity could preclude application of the Medical-Vocations Guidelines.

12

relying on VE testimony that did not exist, and that the remaining step four discussion lacks any substantive analysis, there is nothing for the Court to review.

Accordingly, on remand, if there is a finding that Plaintiff's claim fails at step four, any decision shall set forth the complete analysis for such decision beyond generalized conclusions. If the testimony of vocational expert is needed at any future hearing, the decision shall accurately refer to such testimony in reaching the result.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further proceedings consistent with this Ruling.

Signed in Baton Rouge, Louisiana, on August 31, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**